OPINION OF THE COURT
Thomas Farber, J.
Defendant moves to dismiss the misdemeanor information pursuant to section 30.30 of the Criminal Procedure Law. Because I find that more than 90 days of “chargeable” time has elapsed, the motion is granted.
Background
Defendant was arraigned on June 16, 2001 on a misdemeanor complaint charging him with driving while intoxicated and related charges. As originally drawn, the complaint alleged two “TPO’s” (time and place of occurrence). The first “TPO,” allegedly occurring at 10:00 p.m. on June 15, 2001 on Coney Island Avenue, was based on information supplied by a *162 civilian complainant, Mujeed Hassan. The complaint alleged that Mr. Hassan had seen the defendant driving a car, collide with another vehicle, and not stop to report the accident. The second “TPO,” allegedly occurring 25 minutes later at Brighton 13th Street, was based on information supplied by the police officer deponent, Officer Mark Woods. Officer Woods alleged that he observed the defendant lying on the ground next to a car with obvious damage, the engine running, keys in the ignition, and that defendant told the officer that he had been driving the car and had been involved in an accident. Officer Woods further averred that the defendant exhibited common-law signs of intoxication, and that a certified chemical test showed that the defendant had a blood alcohol level of .23%. In addition, Officer Woods alleged that he recovered marijuana from the defendant’s person, and that defendant did not present a valid driver’s license.
At arraignment, the People served and filed a certified chemical test analysis and other forms, thus converting the counts based upon the deponent’s knowledge to an information. The remaining charges remained unconverted, and the case was adjourned to Part AP-4 for the supporting deposition of the civilian complainant and the laboratory test for the marijuana charge.
On July 31, 2001 the People dismissed the unconverted charges in the first “TPO” and filed the laboratory report, thus making the entire complaint an information. The case was adjourned for discovery by stipulation (DBS).
On September 24, 2001 the People served and filed DBS. The official court action sheet noted “People ready.” The defendant did not appear and a bench warrant was ordered. The defendant appeared on September 28, 2001, and the case was adjourned to November 15, 2001 for hearings and trial. On November 15, 2001 the official court action sheet again notes that DBS was filed and served and “People ready.” The case was adjourned to January 8, 2002 for trial.
On January 8, 2002 the case appeared in Jury Part 1. The People were not ready for trial due to the unavailability of the arresting officer, and the case was adjourned to January 24, 2002 in Trial Part 3.[1] On January 24, 2002 the People again answered not ready because of the unavailability of the arrest *163 ing officer. The case was adjourned to January 30, 2002. Again on January 30, 2002 the People answered not ready stating that the arresting officer was unavailable, this time due to the World Economic Forum. The case was adjourned to February 27, 2002.
The People filed a statement of readiness, off-calendar, on February 1, 2002. On February 27, 2002, however, the fourth time the case was on for trial, the People for the fourth time answered not ready, this time stating that they were still “missing the D.W.I. videotape.” The People requested March 6, 2002. The case was adjourned to March 13, 2002. On March 13, 2002, and on several dates thereafter, the People answered ready and the case was adjourned at defense request. On June 12, 2002 the defense filed the instant motion.
On July 15, 2002 the People requested additional time to respond to the motion, averring that they needed to order the minutes for certain of the dates in question. On August 12, 2002 the People served and filed their response. No minutes at all were attached.
On September 5, 2002 the case was on for decision. Upon my review of the submissions of the parties, it appeared that the amount of “chargeable” time depended on whether the statement of readiness filed, off-calendar, on February 1, 2002 was valid or illusory (see, People v England, 84 NY2d 1, 5 [1994] [“the statement ‘ready for trial’ contemplates more than merely mouthing those words”]; People v Kendzia, 64 NY2d 331, 337 [1985] [ready for trial means present readiness, not an expectation of future readiness]; People v Rosa, NYLJ, Feb. 14, 1995, at 29, col 3). I asked the People to clarify how they could have been ready on February 1, 2002, off-calendar, yet not ready on February 27, 2002 because of a tape that was still missing.
On the next two adjourn dates, October 5, 2002 and October 27, 2002, the People again requested an adjournment to order minutes. Yet on November 7, 2002, the minutes having been received, the People filed a new affidavit, again without attaching any minutes at all.
The new affidavit, which in critical respects is inconsistent with the original affidavit filed by the People as well as internally inconsistent, avers that on February 1, 2002 the People were ready to proceed to trial without the videotape and take a “negative inference,” but on February 27, 2002 “upon reconsideration of the People’s trial strategy, the People decided that it would be more prudent to proceed to trial if the People possessed said DWI videotape” (People’s supplemental *164 affidavit 2, 6). For the reasons stated below, I am unable to credit this representation, and I find the statement of readiness to be illusory.
Discussion
Calculation of speedy trial time in Brooklyn Criminal Court is complicated by a culture that has permitted the People to use the word “ready” in a myriad of situations not contemplated by CPL 30.30 and the governing case law. The People answer “ready,” and actually file statements of readiness for trial, when a supporting deposition is filed, meaning only that they have converted the complaint to a misdemeanor information. When I ask if this means the People are ready for trial they usually respond, “we’re ready for conversion purposes.” Indeed, the People use this same meaningless phrase of their own invention in the memorandum of law filed with this motion (People’s mem of law at 2). The People answer ready when they serve DBS, meaning “we’re ready with DBS.” The People answer “ready for trial” when they really mean that they are not ready for trial, but would be ready but for extraordinary circumstances that would render time not chargeable under CPL 30.30 (4).[2]
The case law makes it quite clear that “ready for trial” means only “ready for trial.” As the Court of Appeals noted in People v Kendzia (64 NY2d 331, 337 [1985]):
“ ‘ready for trial’ in CPL 30.30 (1) encompasses two necessary elements. First, there must be a communication of readiness by the People which appears on the trial court’s record. * * * [S]econd * * * the prosecutor must make his statement of readiness when the People are in fact ready to proceed.”
This does not mean that the People cannot answer ready when the docket is converted to an information. While conversion is, of course, a necessary precondition to the People’s readiness, if the People are in fact ready to proceed to trial, and not simply *165 converted, they may answer ready for trial. Nor does it mean that the People have to have witnesses with them on a date the case is calendered, but not on for trial (People v Camillo, 279 AD2d 326 [1st Dept 2001]; People v Dushain, 247 AD2d 234 [1st Dept 1998]).
When the People answer ready for trial, however, it is a representation to a court, as an officer of the court, that, subject to scheduling, the People have their witnesses available and willing to proceed, and that they have the evidence they need to proceed (see, People v England, 84 NY2d 1, 4 [1994] [readiness means that “the People have done all that is required of them to bring the case to a point where it may be tried”]).
The problem with the promiscuous use of the word “ready” at the pretrial stages of a case is that it has serious consequences for speedy trial calculation at subsequent stages. Once the People have fulfilled their obligation to convert the docket, adjournments for motion practice and discovery are not chargeable regardless of the People’s readiness status (CPL 30.30 [4] [a]; People v Clinton, 152 Misc 2d 555, 558 [Grim Ct, Kings County 1991]). Once the case is on for hearing and trial, however, the determination of whether a case is “pre-readiness” or “post-readiness” can be critical, particularly where adjournments are granted due to calendar congestion. In a postreadiness case the People are only charged with the time requested, and court adjournments for additional time are excluded (People v Stirrup, 91 NY2d 434 [1998]; People v Collins, 82 NY2d 177 [1993]). In a prereadiness case the People are charged with the entire adjournment (People v Smith, 82 NY2d 676 [1993]).
The affidavits and memorandum of law filed by the People in response to the instant motion are replete with claims of “readiness” where it is clear that the People were not in fact ready for trial.[3] My analysis follows.
June 16 to July 31, 2001. The defendant was arraigned on the misdemeanor complaint on June 16, 2001. On that date, since the first “TPO” required a supporting deposition to convert it to an information, the case was adjourned to July 31, *166 2001 for conversion. The People did not ask that the TPO’s be severed or offer to move the converted counts to trial.[4] It is thus clear that the People were not ready for trial on either TPO, although some counts were in fact converted.[5] Nevertheless, the People’s affidavit in response to the instant motion states: “However, the second time and place charged in the complaint was, indeed, converted into an information, since the complaint was * * * self-corroborating. At this date, the People were not ready for trial on TPO number one, but were, in fact, ready for trial on TPO number 2” (People’s affirmation If 3 [emphasis supplied]).
The People are charged 45 days.
July 31, 2001 to January 8, 2002. On the subsequent adjourn date, the People dismissed the unconverted charges and filed the laboratory report for the marijuana charge. The People’s affidavit notes that the People “announced that they were ready for trial.” (People’s affirmation 4.) The People’s memorandum of law “clarifies” this statement, however, noting that the People “announced ready, for purposes of conversion” (People’s mem of law at 2 [emphasis supplied] [there’s that meaningless phrase again]). The case was adjourned for discovery by stipulation. Since DBS is in lieu of motion practice and discovery practice in Kings County, the adjournment is excludable under CPL 30.30 (4) (a), irrespective of the People’s readiness.
On September 24, 2001 the People filed discovery by stipulation and again answered “ready.” The People so state in their affidavit, and the official court action sheet so reflects. But were the People really ready for trial or just “ready with DBS”? September 24, 2001 was less than two weeks after the terrorist attack on the World Trade Center. From the date of the attack until November 19, 2001, the People repeatedly informed me *167 that they could not be ready for trial on any nonjail misdemeanor trial case because the New York City Police Department (NYPD), at the request of the office of the mayor’s criminal justice coordinator, was not permitting police officers to testify on nonjail misdemeanor cases.[6] It is thus inconceivable to me that the People could truly have been ready for trial on this case, which apparently rests entirely on police testimony. While the time is not chargeable due to defendant absconding (CPL 30.30 [4] [c]), it does not follow that the People were “ready for trial.”
Defendant returned on September 28, 2001 and the case was adjourned to November 15, 2001. This time is excludable (People v Drummond, 215 AD2d 579 [2d Dept 1995]; People v Muhanimac, 181 AD2d 464 [1st Dept 1992]). On November 15, 2001, the People aver that they again answered “ready.” This announcement of readiness is, again, suspect since the NYPD did not permit police officers to testify until the following week, but the time would be excludable in any event.[7]
January 8, 2002 to January 30, 2002. On January 8, 2002, the first time the case was on for trial, the People answered not ready due to the unavailability of the arresting officer. The case was adjourned to January 24, 2002 in Trial Part 3. On January 24, 2002 the People again answered not ready and the case was adjourned to January 30, 2002.
The People are charged 22 days.
January 30, 2002 to February 27, 2002. This is the critical adjournment. On January 30, 2002 the People answered not ready, again due to the unavailability of the arresting officer. This time, however, the People stated that the unavailability of the officer was due to the World Economic Forum, which required extensive redeployment of police resources for security reasons. The People requested February 5, 2002. I adjourned the case until February 27, 2002 and told the People to file a statement of readiness if they were ready earlier.
The People filed a statement of readiness on February 1, 2002. But on February 27, 2002, the first time the case was on *168 for trial after the service of the statement of readiness, the People again answered not ready. The official court action sheet, and the minutes subsequently ordered (but not attached to the People’s motion papers), reflect that the reason the People answered not ready was because they were still missing the videotape taken of the defendant at the intoxicated driver testing unit.[8] The People requested March 6, 2002. The case was adjourned to March 13, 2002 with the People again ordered to file a certificate of readiness when ready. Again, no certificate was filed, but the People answered ready in open court on March 13, 2002.
When I received the People’s response, I asked for clarification as to how the People could have been ready on February 1, 2002, off-calendar, if on the subsequent adjourn date they were not ready due to still not having received a piece of evidence that they felt precluded their answering ready.
I ordered the People to clarify this by affidavit. The People responded as follows:
“1. The People announced ready for trial on January 30 in TP3, and filed a statement of readiness with the court on February 1, 2002.
“2. The statement of readiness was not illusory because the People were willing to take a negative inference and proceed to trial without the DWI videotape on this date.
“3. The only reason the case was not tried on January 30 was because the World Economic Forum was taking place and there was a mandatory cancellation on all notifications of police in New York City.
“4. On February 27, upon reconsideration of the People’s trial strategy, the People decided that it would be more prudent to proceed to trial if the People possessed said DWI videotape.
“5. On February 27, the People requested a one-week adjournment in order to procure said videotape. This does not negate the People’s readiness on February 1, 2002 to try the case without the videotape.
“6. The People’s statement of readiness filed with the court on February 1, should not be vacated *169 because the People were, in fact, ready to proceed to trial on January 30. It was only upon a reconsideration of trial strategy that the People decided to wait until the videotape was procured before beginning a jury trial” (emphasis supplied).
I am unable to credit this post hoc analysis. Initially, as the italicized portions of the affidavit show, the People twice aver their “readiness” to try the case at a time when they in fact answered not ready due to the unavailability of the arresting officer. Thus the People continue tó abuse the concept of readiness, equating being “ready” in this instance to being “not ready for a reason that would cause time not to be charged.” Since the People appear not to understand what it means to be ready for trial, it is difficult to credit their assertion that they were ready on February 1, 2002, when they were not ready the three prior times the case was on for trial, and again not ready on February 27, the next time the case appeared on the calendar for trial.
Second, based on the initial affidavit filed, it appears that the People had not even considered the unavailability of the tape as a reason for their lack of readiness, instead averring that they were not ready due to the unavailability of the arresting officer. Only when asked to explain the notation on the court action sheet, did the “change of trial strategy” comment materialize.
Third, the decision to proceed without the tape and take a “negative inference” on the critical issue of defendant’s intoxication, at a time when the tape was apparently available and there was no speedy trial issue, is too bizarre to attribute to a responsible prosecutor. Even assuming that the People can simply decide when to produce a critical piece of evidence and when to withhold it and take sanctions, what possible reason could there be to incur a sanction in this case? And who is to say that the wilful failure to produce and turn over a readily available videotape, showing the defendant taking the breathalyzer test, would result in a “negative inference” as opposed to more stringent sanctions such as dismissal of the information, or suppression of the test results?
Fourth, if the People realized that they did not have the tape on February 1, and decided to proceed to trial without it and take sanctions, why not at least obtain the tape in the next few weeks prior to the February 27 adjourn date? The failure to obtain the tape, several weeks after apparently realizing it was missing, suggests an alternative explanation: for whatever rea *170 son, the People had not actually sat down to consider what evidence, other than the testimony of the arresting officer, they might need to be ready for trial. Only when the officer became available was the absence of the DWI tape noted.
For these reasons, I find the statement of readiness filed on February 1, 2002 to be illusory. Excluding the few days on which the arresting officer was unavailable to testify due to the World Economic Forum, January 30 to February 1, the People are charged from February 1 through March 13, 2002, an additional 40 days.
I thus find 107 days are includable, and the motion is granted.

. The People now attribute their nonreadiness to the unavailability of the arresting officer. The official court action sheet only notes that the adjournment was at the People’s request.

. The equation of “ready” with “converted” or, at subsequent stages, “ready” with having met the People’s discovery obligations, is so prevalent that some judges routinely note “People ready” on the file even if the People only convert the docket, and do not even answer ready on the record. The confusion of readiness with conversion is not new (see, People v Clinton, 152 Misc 2d 555, 558 n 4 [Crim Ct, Kings County 1991] [“(u)nfortunately, the People tend to file corroborating affidavits and announce ready as if readiness and conversion were one and the same concept”]; People v Rodriguez, 2002 NY Slip Op 50035[U] [Grim Ct, Kings County]).

. As the court noted in People v Rodriguez (2002 NY Slip Op 50035 [U] [Grim Ct, Kings County]), absent a clear reason to doubt the bona fid.es of an answer of readiness, a court should accept a representation that the People are ready. Such a representation is made as an officer of the court. Where, however, there are extrinsic facts that indicate that the People could not have been ready, it is appropriate to examine if the People were “merely mouthing” the words (People v England, 84 NY2d 1, 5 [1994]).

. People v Minor (144 Misc 2d 846, 848 [App Term, 2d Dept 1989]) holds that the People can be ready on some counts of an information and not others. This does not mean, however, that simply by converting part of an information the speedy trial time stops running.

. As noted above, although the People requested several adjournments to get minutes, no minutes are attached to the paper submitted. The official court action sheet does not indicate that the People answered ready on any count, only that the case was adjourned for “conversion.” It is, of course, the People’s burden in the first instance to make a clear record of their readiness (People v Cortes, 80 NY2d 201, 215-216 [1992]). And, once the defendant establishes the existence of a delay in excess of 90 days, the burden is on the People to show that the time should be excluded (People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]).

. I have granted literally hundreds of adjournments on these grounds, finding the adjournments to be “exceptional circumstance” adjournments within the meaning of CPL 30.30 (4) (g), and excluded the time for speedy trial purposes.

. The People aver that this was an adjournment at defense request. Defendant does not allege otherwise and the court noted that the adjournment was excludable. In any event, the adjournment would almost certainly be an “exceptional circumstance” adjournment, due to the unavailability of police officers to testify following the attack on the World Trade Center.

. Interestingly, however, the People’s initial affidavit in response to the instant motion stated a different reason, again attributing the failure to be ready to the “arresting officer’s unavailability” (People’s affidavit (| 10).